UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **PEDRO ANTONIO MELENDEZ RIVERA,** | § § § § | |
| *Petitioner*, | § § | |
| **v.** | § § | |
| **TODD BLANCHE,** Acting Attorney General of the United States; **MARKWAYNE MULLIN,** Secretary of the United States Department of Homeland Security; **TODD LYONS,** Acting Director of U.S. Immigration and Customs Enforcement; **MARY DE ANDA-YBARRA,** Field Office Director of the El Paso Field Office of U.S. Immigration and Customs Enforcement; *and* **WARDEN**, ERO EL Paso Camp East Montana Detention Center, | § § § § § § § § § § § § § § | **EP-25-CV-00646-DCG** |
| *Respondents*. | § § | |

## <u>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS</u>

Petitioner Pedro Antonio Melendez Rivera ("Petitioner") seeks a writ of habeas corpus

under 28 U.S.C. § 2241.[1] Petitioner argues that his ongoing detention by United States

Immigration and Customs Enforcement ("ICE") violates the Immigration and Nationality Act

("INA") and the Due Process Clause of the Fifth Amendment.[2] Federal Respondents

("Respondents") oppose the Petition.[3]

---

[1] *See generally* Pet., ECF No. 1.

[2] *Id.* at 13–14.

[3] *See generally* Resp., ECF No. 5.

For the following reasons, the Court **GRANTS** the Petition for Writ of Habeas Corpus (ECF No. 1) **IN PART** and **ORDERS** Respondents to either give Petitioner a bond hearing or release Petitioner from custody.

## I.      Background

### A.      Factual History

Petitioner is a citizen of El Salvador who entered the United States without inspection in 2004.[4] On November 11, 2025, ICE arrested and detained Petitioner in Salisbury, Maryland.[5] That same day, the Government issued a Notice to Appear ("NTA") charging Petitioner as "an alien present in the United States without being admitted or paroled" and thus subject to removal.[6] Petitioner is now detained at Camp East Montana in El Paso, Texas.[7] As far as the record reveals, the Government has neither (1) given Petitioner a bond hearing;[8] nor (2) entered a final order of removal against Petitioner.[9]

---

[4] Pet. at 12.

[5] *Id.*

[6] An NTA is a charging document that "initiates a proceeding before an Immigration Judge." *See* 8 U.S.C. § 1003.13; *id.* § 1003.14(a) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court . . . .").

*See* NTA, ECF No. 1-2, at 1, 4.

[7] Pet. at 13.

[8] Resp. at 2 (stating that "Petitioner has not motioned the Immigration Court for a bond redetermination, nor has the Immigration Judge ruled on a bond hearing for the Petitioner").

[9] In accordance with the undersigned Judge's Standing Order to Provide Status Updates in Immigration Habeas Cases, the Government was required to tell the Court if and when it issued a final order of removal against Petitioner. A copy of that Standing Order is available at https://www.txwd.uscourts.gov/wp-content/uploads/2026/04/Standing-Order-Immigration-Case-Updates-DCG.pdf.

Because the Government hasn't filed a status update stating that it has issued a final order of removal against Petitioner, the Court proceeds under the assumption that no final order of removal exists.

### B.    Procedural History

On December 11, 2025, Petitioner filed a Petition for Writ of Habeas Corpus in accordance with 28 U.S.C. § 2241.[10] Petitioner claims that his ongoing detention violates the INA and the Fifth Amendment to the United States Constitution.[11] Among other things, he asks the Court to: (1) assume jurisdiction; (2) order Respondents to release him or provide him a bond hearing; (3) declare his detention unlawful; and (4) award attorney's fees and costs.[12]

Respondents maintain that (1) the INA requires Petitioner's "mandatory detention" without the opportunity for bond; and (2) Petitioner has no valid basis to challenge his ongoing detention under the Fifth Amendment.[13]

## II.    Legal Standard

The United States Constitution guarantees that, "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States."[14] Detainees bear the burden of showing that they are "in custody in violation of the Constitution or laws or treaties of the United States."[15]

---

[10] Pet. at 1.

[11] *Id.* at 14.

[12] *Id.* at 14–15.

[13] Resp. at 3.

[14] *See Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2).

[15] *See* 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless," with exceptions not relevant here, "he is in custody in violation of the Constitution or laws or treaties of the United States." (citation modified)).

Because habeas proceedings are civil in nature, each petitioner "must satisfy his burden of proof by a preponderance of the evidence." *See, e.g.*, *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696–97 (S.D. Tex. 2025) (first quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); and then citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)).

Under 28 U.S.C. § 2243, the Court must "summarily hear and determine the facts, and dispose of the matter as law and justice require."[16] Because "the facts essential to consideration of the constitutional issue are already before the court," it is unnecessary to hold an evidentiary hearing to decide the Petition; the Court may instead decide the Petition on the papers.[17]

### III.   Discussion

#### A.   Jurisdiction

The Court must determine whether it has subject matter jurisdiction.[18] Congress has divested district courts of jurisdiction to adjudicate certain immigration-related claims that might otherwise be cognizable under 28 U.S.C. § 2241.[19] To that end, Respondents argue that the INA prevents the Court from hearing Petitioner's claims.[20] The Court has already considered and rejected Respondents' arguments in analogous cases.[21] For those same reasons, the Court retains jurisdiction over this Petition.

---

[16] *See* 28 U.S.C. § 2243.

[17] *See Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989).

[18] *See Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first."); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.").

[19] *See Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018); *Bouarfa v. Mayorkas*, 604 U.S. 6, 18 (2024).

[20] *See* Resp. at 6–7.

[21] *See, e.g.*, *Alvarado Luna v. Warden*, 3:25-CV-00565-DCG, 2025 WL 3787494, at *6–7 (W.D. Tex. Dec. 29, 2025), *overruled in part by Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Zamudio Sanchez v. Noem*, No. 3:25-CV-00403-DCG, 2026 WL 596133, at *6–7 (W.D. Tex. Mar. 2, 2026); *Gomes v. Grant*, No. 3:25-CV-00663-DCG, 2026 WL 1179617, at *2 (W.D. Tex. Apr. 21, 2026); Memorandum Opinion and Order Granting Petition for Writ of Habeas Corpus, *Goliakov v. Noem*, No. 3:25-CV-00613 (W.D. Tex. May 1, 2026), ECF No. 16.

### B. Immigration and Nationality Act

The parties dispute whether Petitioner is eligible for a bond hearing under the INA.[22]

Petitioner argues that he is detained under 8 U.S.C. § 1226(a) (and thus *eligible* for a bond

hearing),[23] but this claim is foreclosed by the Fifth Circuit's recent decision in *Buenrostro-*

*Mendez v. Bondi*.[24] Accordingly, the appropriate detention authority must be § 1225(b)(1) or

---

[22] *Contrast* Pet. at 13 (arguing that "the mandatory detention provision of [8 U.S.C.] § 1225(b)(2)(A) does not apply to people like Petitioner, who have already entered and were residing within the United States at the time they were apprehended"), *with* Resp. at (arguing that Petitioner "is described under the catchall provision," or 8 U.S.C. § 1225(b)(2)(A)).

*See also Louisiana v. Pub. Invs., Inc.*, 35 F.3d 216, 219–20 (5th Cir. 1994) ("When presented with two grounds for resolving a case, one statutory and the other constitutional in nature, we will address the statutory ground first and dispose of the case solely on that basis if possible.").

[23] *See* 8 U.S.C. § 1226(a) (providing that "the Attorney General *may* release the alien *on a bond* of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or conditional parole . . . ." (citation modified) (emphases added)).

[24] In *Buenrostro-Mendez*, the Fifth Circuit suggested that the Government could apply either § 1226 or § 1225 to certain "aliens in the United States." *Buenrostro-Mendez*, 166 F.4th at 505 ("It is true that § 1226 applies to aliens in the United States. That it does so, however, does not preclude § 1225 from also applying to such aliens."). Assuming (without deciding) that the Government could detain Petitioner under either authority, nothing suggests that the Government opted to detain him under § 1226. *See id.* at 498–508; NTA at 2.

§ 1225(b)(2).[25] The Court need not decide which paragraph applies, because neither one affords

Petitioner the opportunity for a bond hearing.[26]

Nonetheless, *Buenrostro-Mendez* does not control whether Respondents are detaining

Petitioner in violation of the Constitution.[27] Thus, Petitioner could obtain a bond hearing if the

Constitution requires the Government to provide one under the circumstances.

### C.     Due Process Clause of the Fifth Amendment

Petitioner argues that the Government has violated the Due Process Clause of the Fifth

Amendment by detaining him without the opportunity for a bond hearing.[28] The Court agrees.

---

[25] Both paragraphs direct the Government to detain an applicant for admission "throughout the completion of applicable proceedings." *See Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Jennings*, 583 U.S. at 297); *see also* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."); *id.* § 1225(b)(2)(A) ("[T]he alien shall be detained for a proceeding under section 1229a of this title.").

A noncitizen is an applicant for admission if he (1) is present in the United States but has not been admitted; or (2) arrives in the United States. *See* 8 U.S.C. § 1225(a)(1); *id.* § 1101(a)(13)(A) ("The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."); *id.* § 1182(d)(5)(A) (explaining that "parole of such alien *shall not* be regarded as an admission of the alien" (emphasis added)).

*Cf.* Pet. at 4 ("Petitioner entered the United States on or about October 8, 2023 without having been paroled or admitted.").

[26] Neither paragraph "says anything whatsoever about bond hearings." *See Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Jennings*, 583 U.S. at 297). Thus, the Fifth Circuit concluded that "unadmitted aliens apprehended anywhere in the United States are ineligible for release on bond, regardless of how long they have resided inside the United States." *Id.* at 500.

[27] *See, e.g.*, *Bonilla Conforme v. De Anda-Ybarra*, No. EP-26-CV-263-KC, 2026 WL 381110, at *2 (W.D. Tex. Feb. 11, 2026) ("*Buenrostro-Mendez* has no bearing on this Court's determination of whether a habeas petitioner is being detained in violation of her constitutional right to procedural due process." (citation modified)); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("The right to due process is conferred, not by legislative grace, but by constitutional guarantee." (citation modified)); *Palm Valley Health Care, Inc. v. Azar*, 947 F.3d 321, 326 (5th Cir. 2020) ("[T]he Constitution, not statutes, determine the minimum procedures that due process requires.").

[28] *See* Pet. at 14.

Petitioner is entitled to relief on *procedural* due process grounds, so the Court need not analyze

whether he would also be entitled to relief on *substantive* due process grounds.[29]

### 1.    Procedural Due Process

In *Mathews v. Eldridge*, the Supreme Court articulated a three-part balancing test to

determine whether a procedural due process violation has occurred.[30] The factors are as follows:

1)  "The *private interest* that will be affected by the official action";

2)  "The *risk* of an erroneous deprivation of such interest through the procedures used, and the *probable value*, if any, of additional or substitute procedural safeguards"; and

3)  "The *Government's interest*, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[31]

The Supreme Court distilled these factors from its previous decisions, which "indicate that

identification of the specific dictates of due process generally requires consideration of three

---

[29] The Due Process Clause includes two distinct protections, and each provides an independent basis to challenge detention as unconstitutional. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 746 (1987) ("This Court has held that the Due Process Clause protects individuals against two types of government action."); *Cleveland Bd. of Educ.*, 470 U.S. at 541 ("The categories of substance and procedure are distinct. Were the rule otherwise, the Clause would be reduced to a mere tautology.").

*Substantive* due process "prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'" *Salerno*, 481 U.S. at 746 (first quoting *Rochin v. California*, 342 U.S. 165, 172 (1952); and then quoting *Palko v. Connecticut*, 302 U.S. 319, 325–26 (1937)).

*Procedural* due process is "meant to protect against the mistaken or unjustified deprivation of life, liberty, or property." *AARP v. Trump*, 605 U.S. 91, 94 (2025) (quoting *Carey v. Piphus*, 435 U.S. 247, 259 (1978) (citation modified)). Even if "government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Salerno*, 481 U.S. at 746 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

[30] *Mathews*, 424 U.S. at 334–35.

[31] *Id.* at 335 (emphases added).

distinct factors."[32] Thus, district courts have broadly relied on the *Mathews* factors to evaluate

procedural due process challenges to pre-removal-order detention.[33]

In this case, the *Mathews* factors weigh in favor of Petitioner:

1) Petitioner possesses a cognizable interest in his physical freedom because he lived at liberty in the United States for more than twenty years and has family ties in the country;[34]

2) A bond hearing would mitigate "the risk of an erroneous deprivation of [Petitioner's liberty] interest;"[35] and

---

[32] *Id.* at 334–35.

Although *Mathews* involved a challenge to the deprivation of *property*, the Supreme Court later clarified that the three-part test can be applied in challenges to the deprivation of *life* and *liberty*. *See id.* at 323 (involving challenge to termination of disability benefits); *see also Hamdi*, 542 U.S. at 528–29 (explaining that the Court uses "the test that [it] articulated in *Mathews*" for "determining the procedures that are necessary to ensure that a citizen is not deprived of life, liberty, or property, without due process of law" (citation modified)).

[33] *See, e.g.*, *Zamudio Sanchez*, 2026 WL 596133, at *11 n.116 (collecting cases).

In earlier cases, this Court explained why the *Mathews* factors remain applicable in the immigration detention context even though the Supreme Court did not expressly apply those factors in several of its immigration detention opinions. *See id.* at *12; *Gomes* 2026 WL 1179617, at *6–7. The Court adheres to its prior conclusion that the *Mathews* factors provide the appropriate legal framework for analyzing Petitioner's due process challenge.

[34] *See* Pet. at 12 ("Petitioner has resided in the United States for the last twenty-one years"); *id.* (explaining that Petitioner has three children and "is gainfully employed in Maryland in the field of demolition").

*Cf., e.g.*, *Parham v. J.R.*, 442 U.S. 584, 600 (1979) (explaining that civil detainees possess a "substantial liberty interest in not being confined unnecessarily"); *Garcia v. Noem*, No. 3:25-CV-00624-DB, 2025 WL 3645179, at *4 (W.D. Tex. Dec. 16, 2025) ("Petitioner [who entered the United States without detection] has acquired a liberty interest by being present in the United States for nearly twenty years."); *Saley v. Scott*, No. 2:26-CV-00797, 2026 WL 914810, at *4 (W.D. Wash. Apr. 3, 2026) (deeming petitioner's "family ties" pertinent to the first *Mathews* factor).

[35] *Mathews*, 424 U.S. at 335; *see also, e.g.*, *Black v. Almodovar*, 156 F.4th 171, 194 (2d Cir. 2025) ("In the context of preventive civil detention, the most fundamental due process protection is an individualized hearing, before a neutral decisionmaker, to justify government detention." (citation modified)); *Foucha v. Louisiana*, 504 U.S. 71, 72 (1992) ("Due process requires that the nature of commitment bear some reasonable relation to the purpose for which the individual is committed." (citing *Jones v. United States*, 463 U.S. 354, 368 (1983))).

3) The burden of administering such a hearing would infringe minimally on the Government's interest in using detention to effectuate removal proceedings.[36]

The Court therefore finds that, by detaining Petitioner without the opportunity for a bond hearing, Respondents have deprived Petitioner of his right to procedural due process under the Fifth Amendment.

### D.    Relief

Petitioner requests immediate release from custody or a bond hearing.[37] The majority of courts appear to require a bond hearing before an immigration judge ("IJ") for immigration detainees who have been detained in violation of due process.[38] "[G]iven that the Court has found a *procedural* due process violation,"[39] the Court agrees that a bond hearing is an appropriate remedy.[40] That said, the Court will order that a bond hearing be completed within a

---

[36] *Compare Singh v. Andrews*, No. 25-CV-801, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) ("In immigration court, custody hearings are routine and impose a 'minimal' cost."), *with Black v. Decker*, 103 F.4th 133, 154 (2d Cir. 2024) (noting that "the Department of Justice reported an average cost of detaining noncitizens, in 2019, of $88.19 per prisoner per day").

[37] Pet. at 14.

[38] *See, e.g.*, *Lopez-Arevelo*, 801 F. Supp. 3d at 688 (collecting cases).

[39] *See id.* at 687.

[40] *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (explaining that federal courts "broad discretion in conditioning a judgment granting habeas relief"); *Haygood v. Quarterman*, No. 07-51380, 2008 WL 3244144, at *3 (5th Cir. Aug. 8, 2008) ("Courts have broad discretion in devising habeas relief." (citing *Hilton*, 481 U.S. at 775))

short window.[41] If Respondents do not provide an individualized hearing as required by this Order, they must release Petitioner under reasonable conditions of supervision.[42]

Petitioner also requests costs and attorney's fees.[43] To recover fees against the Government, Petitioner must demonstrate that the Government waived its sovereign immunity.[44] Under the Equal Access to Justice Act ("EAJA"), attorney's fees "are not available in habeas corpus proceedings like this one."[45] The Court therefore denies this request.

## IV.    Conclusion

For these reasons, the Court determines that (1) it has jurisdiction over this matter; and (2) Petitioner has established a violation of the Due Process Clause of the Fifth Amendment as applied to him.

The Court therefore **GRANTS** Petitioner Pedro Antonio Melendez Rivera's "Petition for Writ of Habeas Corpus" (ECF No. 1) **IN PART**.

---

[41] *Cf. Velasquez Salazar v. Dedos*, No. 1:25-CV-00835-DHU-JMR, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025).

[42] *See* 8 U.S.C. § 1231(a)(3) (requiring that the alien "appear before an immigration officer periodically for identification," "give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate," and "obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.").

[43] Pet. at 14.

[44] *See Barco v. Witte*, 65 F.4th 782, 784 (5th Cir. 2023) ("Any waiver of the United States' sovereign immunity must be express, unequivocal, and any ambiguity therein strictly construed in favor of the sovereign.").

[45] See *Pineda v. Noem*, No. SA-25-CV-01518-XR, 2025 WL 3471418, at *6 (W.D. Tex. Dec. 2, 2025) (citing *Barco*, 65 F.4th at 785).

The Court **ORDERS** Respondents to, by **Tuesday, May 12, 2026**:

1) provide Petitioner with a bond hearing before an Immigration Judge, at which the Government shall bear the burden of justifying, by clear and convincing evidence, the dangerousness or flight risk justifying Petitioner's continued detention;[46] or

2) release Petitioner from custody under reasonable conditions of supervision.

The Court further **ORDERS** Respondents to **NOTIFY** Petitioner and Petitioner's counsel **at least 24 hours** before the hearing or release (including the date, time, and location).

The Court further **ORDERS** Respondents to **FILE** an advisory with the Court **no later than Friday, May 15, 2026**, containing (1) detailed reasons for the bond hearing decision; or (2) confirmation of Petitioner's release.

In the event Petitioner is released, the Court **ORDERS** Respondents to **RETURN** Petitioner's property to him (including identification, immigration papers, cell phone, money, keys, and any other personal effects).

**So ORDERED and SIGNED this 5th day of May 2026.**

_____
**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

[46] To secure their release at a bond hearing, noncitizens typically bear the burden of demonstrating that they are neither a danger nor a flight risk. 8 C.F.R. § 236.1(c)(8); *id.* § 1003.19(h)(3). Where bond hearings are ordered as a habeas remedy, however, the burden shifts to the Government to show, by clear and convincing evidence, that the detainee poses a danger or flight risk. *Lopez-Arevelo*, 801 F. Supp. 3d at 688 (citing *Velasco Lopez*, 978 F.3d 842, 855 (2d Cir. 2020)).